**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JEANETTE D. IRBY, ) | |
| ) | CASE NO. 3:13-cv-02293 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE JEFFREY J. HELMICK |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff Jeanette D. Irby ("Irby") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

**I. Procedural History**

On July 13, 2007, Irby filed applications for POD, DIB, and SSI alleging a disability onset date of July 8, 2007.[1] (Tr. 289, 292.) Her application was denied both initially and upon reconsideration. On September 9, 2009, an Administrative Law Judge ("ALJ") held a hearing

---

[1] Previously, Irby had unsuccessfully applied for disability on August 8, 2008, alleging an onset date of August 1, 2003. (Tr. 284.)

during which Irby, represented by counsel, and an impartial medical expert ("ME") testified. (Tr. 118.) On March 12, 2010, the ALJ found Irby was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. On April 19, 2010, Irby filed a request for review of the hearing decision. (Tr. 215.)

Meanwhile, on June 1, 2010, Irby filed a third application for benefits, resulting in a favorable determination on September 9, 2010. (Tr. 7, 134.)

On June 3, 2011, the Appeals Council ("AC") notified Irby that it intended to reopen the favorable decision and consolidate it with the appeal from the March 12, 2010 decision. (Tr. 216.) The AC indicated it would not act for thirty days and notified Irby that she could submit more information or request an appearance. (Tr. 219.)

On August 19, 2011, after receiving no comments from Irby or her representative, the AC consolidated the two applications and remanded the matter for a new decision. (Tr. 134-36.)

On April 24, 2012, an ALJ held a hearing during which Irby, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 7.) On June 8, 2012, the ALJ found Irby was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 21-22.) The ALJ's decision became final when the AC denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age 48 at the time of her most recent administrative hearing, Irby is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). (Tr. 20.) Irby has a high school education and past relevant work as a cook, housekeeper, and welder. (Tr. 20.)

## III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a

2

continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Irby was insured on her alleged disability onset date, July 8, 2007, and remained insured through September 30, 2011. (Tr. 10.) Therefore, in order to be entitled to POD and DIB, Irby must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Irby established medically determinable, severe impairments, due to diabetes mellitus, hypertension, degenerative disc disease of the cervical spine and thoracic spine, mild degenerative joint disease of the right knee, peripheral artery/vascular disease, obesity, a major depressive disorder, a generalized anxiety disorder, post-traumatic stress disorder, and a history of alcohol and cannabis dependence. (Tr. 10.) However, her

---

[2] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 11.) Irby was found incapable of performing her past relevant work (Tr. 20), but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 13.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Irby was not disabled. (Tr. 21-22.)

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the

regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

### RFC Finding

Irby argues that the ALJ erred in the RFC assessment.[3] (ECF No. 12 at 11-15.) The Commissioner asserts that the RFC determination is supported by substantial evidence, including the opinions of multiple expert physicians and psychologists. (ECF No. 13 at 17-22.)

A claimant's RFC is the most that he can still do despite his functional limitations. 20 C.F.R. §§ 404.1545 & 416.945 *et seq.*; SSR 96-8p, 1996 SSR LEXIS 5. The assessment must be based upon all of the relevant evidence, including the medical records and medical source opinions. *Id*. The final responsibility for deciding the RFC "is reserved to the Commissioner."

---

[3] Irby's argument is rather perfunctory. She does not explain why she believes the ALJ erred. Instead, Irby simply recites some of the evidence of record which, without any meaningful explanation, she apparently believes is inconsistent with the RFC. She does not expressly argue that the RFC determination is unsupported by substantial evidence, nor does she argue that the ALJ's RFC assessment violated any procedural rule or regulation.

5

20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2). While this Court reviews the entire administrative record, it "does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 2011 WL 1228165 at * 2 (6th Cir. 2011) (*citing Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). *See also Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 2008 WL 162942 at * 6 (6th Cir. 2008) (stating that "it squarely is not the duty of the district court, nor this court, to re-weigh the evidence, resolve material conflicts in testimony, or assess credibility.") Indeed, the Sixth Circuit has repeatedly upheld ALJ decisions where medical opinion testimony was rejected and the RFC was determined based upon objective medical and non-medical evidence. *See e.g., Ford v. Comm'r of Soc. Sec.*, 114 Fed. App'x. 194, 2004 WL 2567650 (6th Cir. 2004); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x. 149, 2009 WL 2514058 (6th Cir. 2009). "[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe*, 342 Fed. App'x. 149, 2009 WL 2514058 at * 7. Moreover, a plaintiff's mere disagreement with the weight an ALJ ascribes to certain opinions does not provide basis for overturning the RFC determination. *Carter*, 2012 U.S. Dist. LEXIS 40828 at **21-22.

A hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). In fashioning a hypothetical question to be posed to a VE, the ALJ is required to incorporate only those limitations that he accepts as credible. *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence. *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

The ALJ found that Irby retained the capacity to perform light work with a sit/stand option; never climb ladders; rarely climb stairs, kneel, crouch, or crawl; no exposure to obvious hazards; occasional exposure to temperature extremes, humidity, or respiratory irritants; work at an SVP level of 1 or 2; work in which the pace of productivity is not dictated by an external source over which she has no control such as an assembly line or conveyor belt; rare contact with the general public; and, occasional contact with co-workers but no working in tandem with them. (Tr. 13.)

In questioning the RFC with respect to physical limitations, Irby cites the various diagnoses offered by Charanjit Ahluwalia, M.D., Richard D. Patterson, M.D., and Jeffrey Buehrer, M.D.; however, she does not point to any express functional limitations they assessed. (ECF No. 12 at 11-12.) All these diagnoses, save for fibromyalgia,[4] were incorporated among Irby's severe impairments at Step Two. (Tr. 10.) However, a diagnosis alone does not indicate the functional limitations caused by the disability. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment); *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224,1227 (6th Cir. 1988) (signs of arthritis not enough; must show that condition is disabling). Irby does reference one letter from Dr. Ahluwalia, dated December 14, 2009, wherein he opined that Irby "is not able to walk or lift things ... and tends to fall." (ECF No. 12 at 11-12, Tr. 701.) The ALJ directly addressed this opinion and gave it little weight, noting that it was inconsistent with Dr. Ahluwalia's July 2009 assessment. (Tr. 16.) It is axiomatic that the ALJ need not incorporate a medical opinion that was rejected. Furthermore, Irby has not argued that the ALJ erred in the weight she ascribed to the various medical opinions of record.[5]

---

[4] The ALJ rejected the diagnosis of fibromyalgia, as there was no mention in the record of positive tender points which are utilized in diagnosing the ailment. (Tr. 10.)

[5] The Court declines to address the unraised issue of whether the ALJ complied with the treating physician rule as it relates to Dr. Ahluwalia's opinions. In her reply, Irby observes that the opinions of treating physicians are generally given deference, but fails to develop an argument. (ECF No. 14 at 2.) It does bear noting that the ALJ spends almost two pages of the decision discussing Dr. Ahluwalia's treatment and opinions and, as such, her analysis is far from

Irby also argues that the ALJ erred in her RFC finding because she could not meet the mental demands of competitive employment. (ECF No. 12 at 13-15.) She references the Global Assessment of Functioning ("GAF") score of 50 that she was assigned by counselor Annette Laird, PC.[6] (ECF No. 12 at 13-14.) The ALJ addressed this opinion directly in the decision and rejected it as inconsistent. (Tr. 17.) Irby also references the opinion of psychological consultative examiner Wayne Morse, Ph. D. (ECF No. 12 at 14.) She notes that in August of 2010, Dr. Morse assigned her a GAF score of 48, and opined that Irby was markedly impaired in all four areas of work-related mental abilities. (Tr. 793.) The ALJ spent over a page of the decision discussing Dr. Morse's three separate opinions and ascribed his reports little weight because they were inconsistent with the evidence of record as a whole as well as Dr. Morse's own observations. (Tr. 18.) The ALJ ascribed greater weight to the opinions of medical expert Milton E. Foreman, Ph. D. and State Agency psychological consultant Alice Chambly, Psy. D. (Tr. 18-19.) Again, Irby has not argued that the ALJ erred in the weight she ascribed to the various medical opinions of record and the ALJ was not required to incorporate those medical opinions into the RFC that she rejected.

Finally, Irby also references her hearing testimony wherein she reported limitations regarding her ability to sit, stand, walk, and lift, as well as the symptoms associated with her mental impairments. (ECF No. 12 at 13.) However, the ALJ also explicitly rejected Irby's self-reported limitations, and found they were not credible to the extent they were more restrictive

---

cursory. (Tr. 15-17.)

[6] The GAF scale reports a clinician's assessment of an individual's overall level of functioning. *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Association, 4th ed. revised, 2000) ("DSM-IV"). An individual's GAF is rated between 0 - 100, with lower numbers indicating more severe mental impairments. A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning, while a score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See* DSM-IV at 34. It bears noting, however, that a recent update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Association, 5th ed., 2013).

than the RFC. (Tr. 19-20.) The ALJ pointed to Irby's wide range of daily activities, conservative treatment, lack of regular mental health treatment, non-compliance with medication, lack of medication for her mental impairments, and claims of pain in body areas that are rarely, if ever, mentioned in the treatment records as reasons for finding her less than credible. *Id*. However, Irby has not argued that the credibility assessment failed to comport with the regulations. As such, the Court will not raise that issue *sua sponte*. The ALJ was not required to incorporate Irby's uncredited allegations into the RFC or the hypothetical question.

In sum, Irby has not argued that the ALJ erred in her credibility analysis or that the ALJ failed to sufficiently explain the reasons for the weight she ascribed to the various opinions of record.[7] Instead, Irby's brief appears to ask this Court to reconsider the ALJ's decision and essentially conduct a *de novo* review of the record. She asks the Court to find her credible where the ALJ found her incredible and to credit certain medical opinions that the ALJ expressly rejected. As such, her first assignment of error is without merit.

*Withdrawal of Prior Application*

Irby's second argument is not actually an assignment of error. Instead, she asserts that she should be permitted to withdraw her first application for benefits, filed in July 2007.[8] (ECF No. 12 at 15-17.) Irby maintains that she should be permitted to withdraw the earlier application pursuant to 20 C.F.R. §§ 406.640 and 416.355. The applicable regulations state as follows:

> (b) Request for withdrawal filed after a determination is made. An application may be withdrawn after we make a determination on it if--

---

[7] To the extent Irby wished to raise such arguments, it is not the Court's function to develop an argument on her behalf. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 447 F.3d 861, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006).

[8] On January 14, 2014, Irby filed a "Motion to Withdraw prior Application." (ECF No. 11.) The Court denied that motion without prejudice, indicating it would address this argument in its Report and Recommendation. (ECF No. 15.)

> (1) The conditions in paragraph (a)[9] of this section are met;
>
> (2) Any other person whose entitlement would be rendered erroneous because of the withdrawal consents in writing to it. Written consent for the person may be given by someone who could sign an application for him or her under § 404.612; and
>
> (3) All benefits already paid based on the application being withdrawn are repaid or we are satisfied that they will be repaid.

20 C.F.R. §§ 404.640(b) & 416.355(b).

In her Brief on the Merits, Irby asserts that she satisfies all of the above requirements. (ECF No. 12 at 15.) She did not, however, assert that she filed an application at a place described in the regulations. A federal district court is not included among the places where such a withdrawal may be filed. In her reply brief, Irby asserts that she filed a request to withdraw the prior application with the SSA on January 17, 2014. (ECF No. 14 at 7, n. 22.) January 17, 2014 is the same date that Irby filed her motion to withdraw with this Court. It is unclear if Irby believes the motion filed in the case at bar is tantamount to a withdrawal application or whether she filed a separate withdrawal with SSA on the same date. The Commissioner, in her brief filed on February 28, 2014, argues that Irby may not seek withdrawal from the Court in the first instance, strongly suggesting that the SSA has no knowledge of a withdrawal ever being filed with them. (Ecf No. 13 at 24.) In any event, the request for withdrawal is not part of the record before this Court. As such, the Court cannot affirmatively find that Irby complied with the applicable regulations.

Even assuming, for the sake of argument, that this Court could permit Irby to withdraw

---

[9] Paragraph (a) requires that "[a] written request for withdrawal is filed at a place described in § 404.614 [or § 416.325] by the claimant or a person who may sign an application for the claimant ... and the claimant is alive at the time the request is filed." 20 C.F.R. § 404.640(a)(1)&(2). Under 20 § 404.614, places where applications, and therefore withdrawals, can be received are as follows: (1) a Social Security Administration (SSA) office; (2) at a place other than an SSA office if it received by an SSA employee who is authorized to receive an application elsewhere; (3) any office of the U.S. Foreign Service; (4) the Veterans Administration Regional Office in the Philippines; (5) the Railroad retirement Board; (6) the Veterans Administration; and (7) someone at another Federal or State office designated to receive applications for the SSA.

10

her earlier application, the Court does not agree with Irby's position as to the impact of such a withdrawal. As this Court understands Irby's position, she believes that a withdrawal of the earlier application would essentially nullify the unfavorable decision that resulted after the AC consolidated the two applications. She further indicates that she wishes to continue with her later application filed in June of 2010. (ECF No. 14 at 6.) Irby fails to comprehend that the later application was consolidated with the earlier application. Furthermore, Irby has not argued that it was improper for the AC to consolidate the two applications. The ALJ's decision of June 8, 2012 is dispositive of *both* applications. The regulations provide that if SSA approves a request for withdrawal of an application, it will treat the application as though it was never filed. 20 C,F.R. § 404.640(d). However, the regulations say nothing about a nullifying effect as to the disposition of any subsequently filed applications, regardless of whether or not they were consolidated with the withdrawn application.

Irby cites no law to support her novel argument. Irby's lone citation on this issue is to Social Security Ruling (SSR) 68-42a (1968), 1968 WL 3950, which was rescinded in 1978. (ECF No. 12 at 16.) However, that ruling is easily distinguishable. In SSR 68-42a, it was determined that, because the SSA permitted the withdrawal of an earlier application where the criteria for withdrawal were satisfied, the earlier application did not bar the child claimant from recovery for an overlapping time period on a subsequently filed *and approved* application. Conversely, Irby is attempting to nullify the denial of a subsequent application by withdrawing her earlier application. However, the AC *consolidated* the claims. As such, the two claims were replaced by one. Though Irby's June 2010 application was initially granted, that application was ultimately *denied* by the ALJ's June 2012 decision, which became final when the AC denied further review. Frankly, the Court is confounded by counsel's belief that the mere withdrawal of the earlier application would somehow leave only the favorable decision initially rendered on her June 1, 2010 application.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision should be AFFIRMED and judgment entered in

11

favor of the defendant.

s/ Greg White<br>United States Magistrate Judge

Date: September 15, 2014

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**